WAYDELL et al. v. ADAMS et al.

(Supreme Court, Appellate Division, First Department.　December 17, 1897.)

1. APPEAL—REVIEW—EXCEPTIONS.
　　Where there has been a trial before the court without a jury, the only way in which questions of law and fact can be made ready for review is by filing exceptions.

2. SAME—MOTION FOR NEW TRIAL.
　　In such a case a motion for a new trial upon the judge's minutes is irregular, and an appeal from the order denying such a motion raises no question for review.

3. ACTION ON CONTRACT—EVIDENCE.
　　In an action upon a contract of affreightment, the complaint alleged, in effect, that plaintiffs received thereunder from defendants a specified quantity of lumber, and delivered the same to the consignee.　The answer admitted the amount received by the plaintiffs, but denied that it was all delivered, and this denial was established by the evidence.　Held, that it was not open to plaintiffs to prove that the quantity actually delivered was all that had been received by them, as such evidence did not show performance by plaintiffs of the contract upon which the action was based.

Appeal from trial term.

Action by John C. Waydell and others against Edwin W. Adams and another.　From the judgment, and from an order denying a new trial, defendants appeal.　Reversed.

Argued before VAN BRUNT, P. J., and BARRETT, RUMSEY, O'BRIEN, and INGRAHAM, JJ.

A. H. Larkin, for appellants.
Frank B. Sturges, for respondents.

RUMSEY, J.　The trial having been had before the court without a jury, it was not regular to move for a new trial upon the judge's minutes, which could only be done after a trial by jury.　Code Civ. Proc. § 999.　An appeal from the order denying a new trial therefore raises no question which can be reviewed here, but every question, both of law and fact, is brought before us by the exceptions which were filed to the decision.　The only way in which questions of law and fact can be made ready for review, where there has been a trial by the court without a jury, is by filing exceptions to the decision; and when that is done, if the decision is a short one, the whole question is at large before the appellate court, and, if the decision contains separate findings of fact and conclusions of law, proper exceptions will enable the court to review every question which may be presented.

The action is brought upon a contract of affreightment.　The complaint alleges that the plaintiffs were charterers of the schooner Garfield for a voyage between New York and Matanzas, Cuba, and that they entered into a contract with the defendants whereby the defendants agreed to furnish a quantity of lumber, to be shipped upon their schooner and delivered at Matanzas, and to pay freight upon it at $4.50 a thousand feet, upon delivery to the consignee at the port of destination.　The complaint then alleges that the defendants de-

livered to the schooner a quantity of lumber, which the defendants stated and represented to be 314 bundles and 18,445 pieces of white-pine lumber, the freight upon which amounted to the sum of $959.06. Then follows an allegation that the lumber shipped by the defend-. ants was duly delivered to the consignee thereof, and that upon delivery of the said lumber there became due, as and for the freight agreed by the defendants to be paid for the transportation thereof, the sum of $959.06, and that no portion of that freight has been paid, except the sum of $123.56, leaving $835.50 due. The sum of $959.06 is the amount of the freight upon the whole quantity of lumber alleged in the complaint to have beeen shipped, and· mentioned in the bill of: lading as the quantity delivered by the defendants for transportation to Matanzas. The complaint contains nowhere any allegation or suggestion that any less quantity of lumber than that mentioned in the bill of lading was shipped in New York, or that any less quantity was delivered at Matanzas; · but it proceeds upon the theory that the quantity mentioned in the bill of lading was shipped, that that quantity was delivered, and that the amount of freight earned was the precise amount which would have been earned had the quantity of lumber specified in the bill of lading been actually delivered at Matanzas. The action, therefore, was only upon the contract of affreightment. The answer admitted the contract as set up in the complaint. It admitted that there was delivered to the schooner, to be transported to Matanzas, 314 bundles and 18,445 pieces of white-pine lumber, the freight upon which, according to the agreement, amounted to $959.06; but it denied that that amount was delivered, the defendants insisting that the plaintiffs did not deliver the full amount of lumber mentioned in the bill of lading, and that for that reason they were not entitled to recover the freight. So it will be seen that there was no dispute between the parties as to the amount of lumber delivered on board the ship in the port of New York; and the only question was whether that full amount was delivered at Matanzas, as it was only upon the delivery of that amount that the plaintiffs could recover the freight to which they claimed to be entitled. The burden therefore lay upon the plaintiffs of proving the delivery at Matanzas of the amount of lumber which they received on board the schooner at New York for transportation to the place first named. There was no pretense that the plaintiffs ever delivered that quantity of lumber to the consignee. On the contrary, they proved by their own witnesses that the quantity of lumber received by the consignees, instead of being 314 bundles and 18,445 pieces, was 314 bundles and 14,744 pieces, and that there was in fact a shortage of 3,701 pieces, amounting to 27,663 feet.

It is quite apparent that upon this state of facts the plaintiffs did not establish a right to recover against the defendants. Their action was brought purely upon the contract, and they could only recover by proving its performance as they had alleged it in the complaint. Failing, however, in the attempt to do this, they sought to recover for the carriage of the lumber actually delivered to the consignee; and this they were permitted to do by the learned judge at the trial term, although there were no allegations in the complaint

sufficient to warrant a recovery upon any such theory.    To recover
upon that theory, it was necessary that they should make it appear
that they had delivered at Matanzas all the lumber which they had
received at New York, and that the amount of it was in fact 14,744
pieces, instead of 18,445 pieces,—there being no question as to the
number of bundles delivered.    Upon the case as presented by the
pleadings, it was not proper that the plaintiffs should prove that a
less quantity of lumber was delivered for transportation to Matanzas
than was alleged in the complaint to have been so delivered.    The
complaint alleged that the quantity received for transportation was
314 bundles and 18,445 pieces, and that that quantity was actually
transported and delivered at the port of destination.    It was admit-
ted by the answer that that quantity of lumber was actually delivered
to the plaintiffs at New York, to be shipped to Matanzas.    As the
pleadings stood, it was not an open question as to the amount of lum-
ber delivered for transportation to Cuba;  and the plaintiffs were not
in a situation to show that a less quantity was shipped than they
had alleged in their complaint, and than was admitted by the an-
swer.    For that reason, therefore, the proof relied upon by the
plaintiffs, that a less quantity than that mentioned in the bill of
lading was delivered at Matanzas, was, under the admisssions of the
pleadings, an absolute bar to their recovery upon the contract of af-
freightment.

But, passing that point, we are quite clear that, even if the plain-
tiffs had been at liberty, upon the pleadings as they stood, to estab-
lish that the amount of lumber delivered to them for transportation
was less than the amount mentioned in the bill of lading, they utterly
failed in their attempt to make that proof.    Upon that subject they
proved that they delivered a bill of lading acknowledging the receipt
for transportation of 314 bundles and 18,445 pieces.    They showed
by the officers of the vessel that none of the lumber received was lost
overboard during the voyage.    They showed by the mate that, al-
though he acknowledged the receipt of that amount of lumber, and
the bill of lading was based upon his acknowledgment, yet that he
did not have personal knowledge that all of it was received,—a fact,
by the way, which does not tend to prove that the bill of lading was
not true.    They then attempted to prove by the testimony of the
mate and the master that all the lumber shipped was delivered at
Matanzas, that they tallied it as it was delivered over the side of the
schooner at that port, and that the amount tallied by them was less
than the quantity called for by the bill of lading, but was the same
as that acknowledged by the consignee to have been received;  thus
attempting to raise an inference that the quantity stated in the bill
of lading was incorrect, by showing that all the lumber tallied at
Matanzas was not sufficient to constitute the amount stated by that
instrument to have been shipped.    The mate testified that he tal-
lied the deck load of lumber, and a portion of that which was deliv-
ered from the hold.    The master testified that he tallied the greater
portion of the lumber from the hold.    It is apparent that the force
of this evidence depends, in the first place, upon the credit to be

given to the master and the mate; and, in the second place, upon proof that those two officers tallied all the lumber that went over the side of the ship at Matanzas. It is not pretended that any one else tallied any of it; and it appears from the testimony of the master that although, after the mate ceased to keep the list, and he began to do so, he was not present on the ship all the time while the lumber was being discharged. He says that he took the tally of the lumber for the entire balance after the delivery of the general cargo began. But he subsequently says that he was there every day, but not all the time. He says that he went there each day to attend to business, and he went back to dinner, and remained the rest of the day. So it is quite apparent from his testimony that, so far from keeping tally of all the lumber delivered, there was a large portion of each day in which it is conceded that he was not present on the vessel. It appears, also, from his testimony, that the delivery of the lumber began on Monday, the 24th of November, and that is the date of the first receipt. He says positively that there was a delivery of lumber every day, and a receipt given each night for the amount delivered during the day, until the 29th, when a general receipt was given for a quantity which included all the lumber that had been received by the consignee during the week. It may be quite true that lumber was delivered over the side of the schooner every day, but it is just as true that, from the evidence produced here, it was not received by the consignee every day. There is no receipt of the consignee for lumber received on the 25th of November, although there is such a receipt for the 24th, the 26th, two for lumber delivered on the 27th, and one for the 28th, and a general receipt on the 29th. So it is quite apparent that, if the master is correct in saying that a receipt was given each night for lumber delivered during the day, there must have been lumber delivered on the 25th to somebody, for which a receipt was not produced. This testimony, of itself, throws so much discredit upon the statement of the quantity of lumber delivered over the side of the schooner, that it would not do to rely upon it to overthrow the strong prima facie evidence of the bill of lading as to the quantity received by the plaintiffs. But, in addition to that, it was made to appear by the defendants that the precise amount of lumber mentioned in the bill of lading was actually delivered in New York. There were produced the tally books kept in New York by the persons who checked the lumber delivered on board the schooner; and those very persons whose duty it was to keep, and who did keep, those books, and took account of the quantities delivered, testified to the correctness of their books, and that there was actually delivered, as shown by the tally books, on board the schooner at the port of New York, the precise quantity of lumber called for by the bill of lading. So that we have on the one side, in this case, the bill of lading, re-enforced by testimony of disinterested witnesses who kept account of the lumber, and who make it appear that the exact amount of lumber specified in the bill of lading was delivered. On the other side, to attack that, we have only the statement of the master of the vessel, who was, confessedly, not present all the time while the lum-

ber was being discharged at Matanzas, and who is not able to account for one of the receipts which he said was given, but he insists that the lumber receipted for by the consignee was all that the plaintiffs received. This evidence is entirely insufficient to overthrow the proof that the actual amount of lumber delivered at New York was that mentioned in the bill of lading. That being so, it cannot be denied that the plaintiffs did not perform the contract made by them, and which they set up in their complaint, and for that reason they failed to show themselves entitled to recover. The judgment was therefore erroneous, and should be reversed, and a new trial ordered, with costs to the appellants to abide the event. All concur.